**James R. COOK, Claimant–Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 94–7073.

United States Court of Appeals,
Federal Circuit.

Oct. 11, 1995.

Ronald L. Smith, Disabled American Veterans, Bowie, Maryland, argued for claimant-appellant.

Brian M. Simkin, Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for respondent-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Anthony H. Anikeeff, Assistant Director.

Before RICH, PLAGER, and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

This case requires us to determine whether § 204 of the Equal Access to Justice Act ("EAJA"), Pub.L. No. 96–481, § 204, 94 Stat. 2328 (1980), *codified as amended at* 28 U.S.C. § 2412(d), authorizes an award of fees for the services of an unsupervised nonlawyer representative appearing before the Court of Veterans Appeals on behalf of a veteran appealing a denial of benefits. The Court of Veterans Appeals denied such an award to James R. Cook (Appellant), concluding that Congress did not provide for such fees in the 1992 legislation making the EAJA applicable to proceedings before the Court of Veterans Appeals. We agree that the EAJA cannot be read to cover the type of fees sought, and therefore *affirm* the judgment of the Court of Veterans Appeals.

## BACKGROUND

Appellant, a World War II veteran, applied to the Department of Veterans' Affairs for disability benefits based on a duodenal ulcer and nervous condition, which Appellant claimed were connected to his military service. The agency denied the application. The Board of Veterans Appeals (Board) affirmed the denial of benefits based on a lack of service connection. Appellant appealed to the Court of Veterans Appeals. Andrew H. Marshall, a nonlawyer employee of the Disabled American Veterans (DAV), represented Appellant during the appeal. The DAV is a Congressionally chartered, nonprofit veterans' service organization that aids and assists veterans who were disabled during wartime service. *See* 36 U.S.C. § 90a–k (1988). The DAV employs both licensed attorneys and nonlicensed lay personnel to represent veterans seeking benefits before the Board or the Court of Veterans Appeals. Attorneys and nonlawyer representatives for the DAV, and other organizations that the agency approves to assist veterans seeking benefits, are statutorily prohibited from charging veterans fees for representation before the agency, *see* 38 U.S.C. § 5902(b)(1) (Supp. V 1993). DAV personnel also do not charge veterans for representation before the Court of Veterans Appeals.

The Court of Veterans Appeals' constitutive statute and Rules of Practice and Procedure permit representation in that court by unsupervised nonlawyers such as Mr. Marshall. Section 7263(b) of Title 38 provides that "[i]n addition to members of the bar admitted to practice before the Court in accordance with [the court's] rules of practice, the Court may allow other persons to practice before the Court who meet standards of proficiency prescribed in such rules of practice." 38 U.S.C. § 7263(b) (Supp. V 1993). Rule 46(b) of the court's Rules of Practice and Procedure provides:

> [a] non-attorney of good moral character and repute (1) under the direct supervision of an attorney admitted to the bar of the Court, or (2) employed by an organization which is chartered by Congress, is recognized by the Secretary of Veterans Affairs for claims representation, and provides a statement signed by the organization's chief executive officer certifying to the employee's (A) understanding of the procedures and jurisdiction of the Court and of the nature, scope, and standards of its judicial review; and (B) proficiency to represent appellants before the Court, may be admitted to practice before the Court....

Ct.Vet.App.R. 46(b). Mr. Marshall entered an appearance on behalf of Appellant as a "Representative and Non–Attorney Practitioner" admitted to practice before the court under Rule 46(b)(2), and conducted the appeal without supervision of a DAV attorney.

Appellant won the appeal. The Court of Veterans Appeals held that the Board's findings on lack of service connection were clearly erroneous. The court reversed and remanded to the Board with instructions to award service connection and assign an appropriate disability rating for the nervous disorder, and to make further factual findings concerning the duodenal ulcer.

Appellant then applied to the court under § 204 of the Equal Access to Justice Act, Pub.L. No. 96–481, § 204, 94 Stat. 2328 (1980), codified as amended at 28 U.S.C. § 2412(d) (1988) (hereafter "EAJA § 204" or "§ 2412(d)"), for an award, with respect to Mr. Marshall's services during the appeal, of "reasonable attorney fees" in the amount of

$2,078.14. Section 2412(d) provides in relevant part:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust....

> (d)(2) For the purposes of this subsection—(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees....

28 U.S.C. §§ 2412(d)(1)(A), 2412(d)(2)(A) (emphasis added). In 1992, Congress amended § 2412(d)(2)(F) to include the Court of Veterans Appeals within the definition of a "court" that may grant attorney fee awards under § 2412(d). Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 506, 106 Stat. 4506, codified at 28 U.S.C. § 2412(d)(2)(F) (hereafter FCAA § 506).

The Court of Veterans Appeals denied the fee award, holding that EAJA § 204 did not authorize fees for the services of an unsupervised nonlawyer. Cook v. Brown, 6 Vet.App. 226, 232 (1994). The court noted that the EAJA was a waiver of sovereign immunity and must be strictly construed in favor of the government. Indicating that the phrase "reasonable attorney fees" did not obviously cover nonlawyers, 6 Vet.App. at 230–31, the court examined the legal backdrop against which Congress enacted FCAA § 506 to determine whether Congress intended such coverage. The court concluded that "[t]here is no indication that Congress, in making the EAJA applicable to this Court in [FCAA § 506], envisioned an award of attorney fees to non-**attorney practitioners**," as opposed to "attorneys" expressly covered by EAJA

§ 204. 6 Vet.App. at 231 (emphasis in original).

In support of this conclusion, the court found that Congress had failed to provide expressly for fee awards for unsupervised nonlawyers under EAJA § 204 when it enacted FCAA § 506, notwithstanding the fact that at that time (1) the Court of Veterans Appeals had promulgated its rules permitting unsupervised nonlawyers to practice before it; (2) the case law only permitted recovery under EAJA § 204 for nonlawyer (e.g., paralegal) work which was *supervised* by an attorney (implying that fees for unsupervised nonlawyers would require express authorization); and (3) Congress had expressly authorized fee-shifting for unsupervised nonlawyers practicing before the Tax Court, the only court other than the Court of Veterans Appeals which permits nonlawyer representation.[1] The Court of Veterans Appeals found the existence of the Tax Court fee-shifting provision especially persuasive, stating that "[i]f Congress found it necessary to provide specifically for attorney-fee awards for unsupervised non-attorneys practicing before the Tax Court, its failure to enact a similar provision specifically applicable only to this Court, or as part of the EAJA attorney-fee provisions in general, must be interpreted as deliberate.... [T]he existence of the Tax Court attorney-fee provision [is] a virtually unassailable indication that Congress did not intend to permit the award of an 'attorney' fee to a non-attorney practitioner before this Court." 6 Vet.App. at 232. Accordingly, the court denied an award of fees for Mr. Marshall's work. This appeal followed.

## DISCUSSION

■ This case presents a single issue of statutory interpretation: does EAJA § 204 (28 U.S.C. § 2412(d)) permit an award of fees to cover the charges of an unsupervised nonlawyer admitted to practice before the Court of Veterans Appeals? We review without deference the Court of Veterans Appeals'

answer to this question of law. *See* 38 U.S.C. § 7292(a), (c), (d)(1) (Supp. V 1993).

1.

■ ˙Appellant agrees with the government that the EAJA is a limited waiver of sovereign immunity, *Levernier Construction, Inc. v. United States,* 947 F.2d 497, 502 (Fed.Cir.1991), and that if the statute does not unambiguously authorize fees for Mr. Marshall's services, Appellant must lose. The EAJA " 'lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, [but] does so only to the extent explicitly and unequivocally provided.' " *Id.* (quoting *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1386 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983)). Appellant argues, however, that "[t]he plain language of § 2412(d) must be deemed to include nonlawyers admitted to practice under [Court of Veterans Appeals Rule] 46(b)(2)," who perform the same functions and are subject to the same standards of professional conduct as licensed attorneys. Appellant contends that by rejecting this functional interpretation of "attorney" for the EAJA and denying fee awards to nonlawyer representatives like Mr. Marshall, the Court of Veterans Appeals has frustrated the purpose of the EAJA, which is to enable impecunious litigants to secure representation, vindicate their rights, and help deter agency misbehavior.

■ Although Mr. Marshall unquestionably performed valuable service as Appellant's representative, we cannot agree that he is an "attorney" within the plain meaning of the EAJA, or that the statute unambiguously authorizes an award of his fees in this case. The statute does not directly define the term "attorney fees." Nevertheless, the statute as a whole indicates that the term "attorney fees" in § 2412(d) does not cover the fees of unsupervised nonlawyers. *See Smith v. Brown,* 35 F.3d 1516, 1522–23 (Fed. Cir.1994) ("Only by such full reference to the context of the whole can the court find the

---

1. Under 26 U.S.C. § 7430(c)(3), "fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or before the Internal Revenue Service shall be treated as fees for the services of an attorney," for fee-shifting purposes.

plain meaning of a part."). Congress clearly distinguished in the EAJA between "attorney fees" and charges for representation by unsupervised nonlawyers such as Mr. Marshall.

EAJA contains two fee-shifting provisions: § 204 (codified at 28 U.S.C. § 2412(d)) authorizes the award of "fees and other expenses" incurred in adversary administrative adjudications. "Fees and other expenses" is defined identically in the two provisions, with one critical distinction: § 204 permits recovery of "reasonable attorney fees," while § 203 permits recovery of "reasonable attorney or agent fees." Thus the EAJA expressly recognizes two different and mutually exclusive types of representative, "agents" and "attorneys," and authorizes recovery of agent fees only in agency, not court, proceedings.

Congress understood "agents" to be persons who are not trained and authorized generally to practice law, and who may not represent clients without special permission from a given tribunal. The House Judiciary Committee Report on the Senate bill, S.265, from which the EAJA was derived, explained that "[a]n 'agent fee' may be awarded for the services of a non-attorney where an agency permits such agents to represent parties who come before it." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4993. Congress thus identified "agent fees" as fees for representation by an authorized nonlawyer, such as Mr. Marshall. Implicitly, then, Congress understood "attorney fees" to mean fees for representation by persons who are qualified generally to appear as a legal representative in any administrative or judicial proceeding, presumably by virtue of their formal training and licensure in the general practice of law.

The ordinary meaning of the term "attorney" supports this interpretation. *Jones v. Brown,* 41 F.3d 634, 638 (Fed.Cir.1994) (" 'legislative purpose is expressed by the ordinary meaning of the words used.' ") (quoting *Ardestani v. INS,* 502 U.S. 129, 136, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991)); *see also Best Power Technology Sales Corp. v. Austin,* 984 F.2d 1172, 1177 (Fed.Cir.1993)

("It is a basic principle of statutory interpretation ... that undefined terms in a statute are deemed to have their ordinarily understood meaning.") (citation omitted). Black's Law Dictionary states that "[i]n its most common usage ..., unless a contrary meaning is clearly intended, [attorney] means 'attorney at law', 'lawyer' or 'counselor at law'." Black's Law Dictionary 128 (6th ed.1990). An "attorney at law" is a "[p]erson admitted to practice law in his respective state and authorized to perform both civil and criminal legal functions for clients...." *Id.* The EAJA gives no indication that it intends "attorney" to be defined other than as "attorney at law," i.e., someone formally trained and licensed in the general practice of law.

Accordingly, the fact that Mr. Marshall may perform the same elements of client representation as a lawyer (i.e., filing pleadings and conducting oral argument), and operate under the same procedural and ethical rules before the Court of Veterans Appeals, does not render Mr. Marshall an "attorney" under the EAJA. Those same considerations render him an "agent," as that term is used in EAJA § 203, and his fees "agent fees." However well versed and skilled he may be in veterans benefits law, which we do not doubt, Mr. Marshall is not generally trained or licensed in the practice of law or admitted to practice law before any court other than the Court of Veterans Appeals. The Court of Veterans Appeals itself admitted Mr. Marshall as a "Non–Attorney Practitioner," which, despite Appellant's argument to the contrary, fully accords with and reinforces the EAJA's distinction between "agents" and "attorneys." We conclude that the plain meaning of "reasonable attorney fees" under EAJA § 204 (28 U.S.C. § 2412(d)) does not cover fees for representation by an unsupervised nonlawyer such as Mr. Marshall.[2]

**2.**

We have reviewed carefully the legislative history of FCAA § 506, which extended EAJA coverage to the Court of Veterans

---

**2.** Similarly, because Congress listed "agent fees" as a cost item separate from and in addition to other "expenses," we cannot treat Mr. Marshall's fees as an unenumerated "expense" recoverable under EAJA § 204.

Appeals, and the EAJA for guidance on whether, as Appellant claims, our interpretation of EAJA § 204 contravenes Congressional intent. To this end we have also reviewed the history of the Veterans Judicial Review Act (VJRA) of 1988, Pub.L. No. 100–687, 102 Stat. 4105, *codified at* scattered sections of Title 38, which created the Court of Veterans Appeals in 1988 and authorized it to permit unsupervised nonlawyers who meet the court's proficiency standards to appear before it. Nothing in the legislative history of any of these statutes evinces a clear intent to authorize fees for unsupervised nonlawyers practicing before the Court of Veterans Appeals. Accordingly, we cannot find the necessary waiver of sovereign immunity to pay those fees.

The Conference Committee report accompanying the EAJA states that the fees available under EAJA § 204 (28 U.S.C. § 2412(d)) include "reasonable attorney or agent fees." *See* H.Conf.Rep. No. 96–1434, *reprinted in* 1980 U.S.C.C.A.N. 5003, 5015. This statement does not accurately reflect the plain language of the statute, and does not explain why, if "agent fees" were intended to be available under EAJA § 204, that section does not expressly include them, as does the contemporaneously-enacted fee-shifting provision for agency proceedings in EAJA § 203 (5 U.S.C. § 504). As with other portions of the Report, this statement appears simply to import, essentially verbatim, comments made with respect to fee-shifting for agency proceedings. Therefore it provides no basis for concluding that Congress clearly intended and authorized recovery of "agent fees" in court proceedings. Likewise, we find certain broad statements in an earlier House Judiciary Committee report, discussing fees available under EAJA § 204 by cross-referencing EAJA § 203, insufficient to warrant a different conclusion. *See* H.R.Rep. No. 1418, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4997 ("Section 2412(d) authorizes an award of reasonable fees and expenses in judicial proceedings analogous to the awards authorized in adversary adjudications under § 3 of this title (§ 504)."); *id.*

("The definitions of 'fees and expenses,' 'party,' and 'person' are explained under section 3(a) of this bill. (New section 504(b) of title 5).").

The Government asserts, and it is not contested, that when the EAJA was first enacted in 1980, and later reenacted and made permanent in 1985, *see* Pub.L. No. 99–80, § 6, 99 Stat. 183, 186 (1985), numerous agencies permitted nonlawyer "agents" to represent parties before them. In contrast, it does not appear that any court whose proceedings were covered by the EAJA admitted unsupervised nonlawyers to practice.[3] Therefore Congress apparently did not confront the question of whether to allow fees for unsupervised nonlawyer representatives under EAJA § 204. In any event, it did not provide for such fees.

In 1992, however, when Congress enacted FCAA § 506 and made the EAJA applicable to the Court of Veterans Appeals, it presumably was aware that unsupervised nonlawyers practiced before that court. Only four years before, Congress had authorized the court to admit nonlawyers meeting proficiency standards established by the Court of Veterans Appeals, *see* 38 U.S.C. § 7263(b). Also, Congress had authorized such agents to charge fees for their work in court proceedings, *see* 38 U.S.C. § 7263(c) (requiring representatives before Court of Veterans Appeals to file copy of any fee agreement with client), and thus presumably knew that the issue of unsupervised nonlawyers' fees might arise. The Court of Veterans Appeals already had promulgated Rule 46(b)(2), under which Mr. Marshall was admitted as a Non-Attorney Practitioner. *See also* Ct.Vet. App.R. 46(e) (requiring representative of veteran to file copy of fee agreement or statement that representation is without charge). Moreover, Congress had already faced the issue of fee-shifting for unsupervised nonlawyers, both in EAJA § 203 and in 1982 legislation explicitly authorizing fees for attorneys and nonlawyers admitted to practice before the Tax Court. *See* 26 U.S.C. § 7430(c)(3)

---

**3.** Although the Tax Court permitted unsupervised nonattorney representatives to appear before it, its proceedings were not subject to the EAJA.

*See Sanders v. Commissioner of Internal Revenue,* 813 F.2d 859, 861–62 & n. 1 (7th Cir.1987).

("fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or before the Internal Revenue Service shall be treated as fees for the services of an attorney."). Thus Congress recognized that attorneys and nonlawyer representatives differed and that both parties could practice unsupervised before the Court of Veterans Appeals, and knew how to shift fees for unsupervised nonlawyers when it wanted to do so. We agree with the Court of Veterans Appeals that in this context, Congress' failure to expressly authorize fees for unsupervised nonlawyers precludes us from reading such authorization into § 2412(d).

We do not agree with the Court of Veterans Appeals that the case law existing when Congress enacted FCAA § 506 *"restrict[ed]* the phrase 'reasonable attorney fees' to work performed or supervised by an attorney." 6 Vet.App. at 231 (emphasis added). The Supreme Court, and lower courts, have approved the inclusion of fees for paralegals, law clerks, and law students, in fee awards under EAJA or analogous fee-shifting statutes, on the theory that their work contributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs. *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2471 n. 10, 105 L.Ed.2d 229 (1989); *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 99, 111 S.Ct. 1138, 1146, 113 L.Ed.2d 68 (1991); *Miller v. Alamo,* 983 F.2d 856, 862 (8th Cir. 1993). All such cases cited by the Court of Veterans Appeals, and revealed by our research, involved supervised nonattorneys (e.g., paralegals, law clerks, law students), and thus did not consider whether fees were available for representation exclusively conducted by a nonattorney. *E.g., Jenkins,* 491 U.S. at 284–89, 109 S.Ct. at 2469–2472; *Jean v. Nelson,* 863 F.2d 759 (11th Cir.1988), *judgment aff'd sub. nom., Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Jordan v. United States Dep't of Justice,* 691 F.2d 514 (D.C.Cir.1982). Nevertheless, nothing in those cases would have suggested to Congress in 1992 that fees for unsupervised nonlawyers were already allowed as "reasonable attorney fees" under EAJA § 204, such that no express provision for such fees was needed. The case law, therefore, provides no basis for finding that FCAA § 506 either ratified or rejected an award for unsupervised nonlawyers' fees.

As Appellant points out, Congress enacted FCAA § 506 in response to *Jones v. Derwinski,* 2 Vet.App. 231 (1992) *(in banc),* in which the Court of Veterans Appeals held that the EAJA did not apply to that court's proceedings. *Jones,* which involved fees for an attorney, did not raise the issue of fees for unsupervised nonlawyers; therefore, Appellant argues, "[t]here was no reason for Congress to deal with that issue." Yet if there was no reason for Congress to deal with the issue, then there is likewise no reason for us to infer that Congress consciously waived sovereign immunity for fee awards involving unsupervised nonlawyers. The most we can discern from FCAA § 506, is Congress' intent to provide fees for attorneys in Court of Veterans Appeals proceedings. The general statement which Appellant quotes from the legislative history of the FCAA § 506, that "[v]eterans are exactly the type of individuals the statute was intended to help," is consistent with this reading of Congressional intent, since permitting fee-shifting for attorneys in the Court of Veterans Appeals obviously helps veterans. The same is true of an earlier statement by the Senate Judiciary Committee that "[t]he committee intends to make clear that EAJA applies to the court to the full extent of the law, including the principles contained in *Sullivan v. Hudson,"* S.Rep. No. 342, 102d Cong., 2d Sess. 39 (1992) U.S.Code Cong. & Admin.News 1992 at p. 3921 (footnotes omitted), which principles we have elsewhere identified as being that "the EAJA must be read in light of its purpose to diminish the deterrent effect of seeking review of, or defending against, governmental action." *Jones v. Brown,* 41 F.3d at 637.

In *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), the Supreme Court held that 42 U.S.C. § 1988, which permits the award of a "reasonable attorney's fee" in

actions to enforce certain provisions of the civil rights laws, did not include the reasonable costs of expert witnesses. The Court emphasized that the statute did not expressly include expert fees, unlike numerous other federal fee-shifting statutes. The Court rejected an argument that "even if Congress plainly did not include expert fees in the fee-shifting provisions of § 1988, it would have done so had it thought about it." The Court stated:

> Thus, the argument runs, the 94th Congress simply forgot; it is our duty to ask how they would have decided had they actually considered the question. [citation omitted]
>
> This argument profoundly mistakes our role. Where a statute term presented to us for the first time is ambiguous, we construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law. [citation omitted] We do so not because that precise accommodative meaning is what the lawmakers must have had in mind (how could an earlier Congress know what a later Congress would enact?), but because it is our role to make sense rather than nonsense out of the corpus juris. But where, as here, the meaning of the term prevents such accommodation, it is not our function to eliminate clearly expressed inconsistency of policy and to treat alike subjects that different Congresses have chosen to treat differently. The facile attribution of congressional 'forgetfulness' cannot justify such a usurpation.... We thus reject this last argument for the same reason that Justice Brandeis, writing for the Court, once rejected a similar (though less explicit) argument by the United States:

> '[The statute's] language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.'

*Iselin v. United States,* 270 U.S. 245, 250–51 [46 S.Ct. 248, 250–51, 70 L.Ed. 566] (1926).

499 U.S. at 100–01, 111 S.Ct. at 1147–48. Thus we have

> no authority to speculate over hypothetical scenarios that Congress did and did not 'have in mind' in enacting EAJA. Indeed, it is a fanciful notion to even think that we might be able to surmise what Congress 'had in mind,' apart from the specific words of the statute. We can only enforce the statute as written....

*Jones v. Lujan,* 883 F.2d 1031, 1034–35 (D.C.Cir.1989). *See also United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985) ("the fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do.").

As stated above, there simply is no clear indication that Congress intended to cover fee awards for unsupervised nonlawyers practicing in the Court of Veterans Appeals. We therefore must apply the plain language of the statute, which does not permit recovery of Mr. Marshall's fees.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Veterans Appeals.

**AFFIRMED.**