# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-3483(E)

Joseph J. Froio, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

On Appellant's Application for Attorney Fees and Expenses

(Argued May 6, 2015                    Decided May 29, 2015)

*Daniel L. Nagin*, of Jamaica Plain, Massachusetts, with whom *Robert V. Chisholm*, of Providence, Rhode Island, was on the pleading for the appellant.

*Ronen Morris*, with whom *Tammy L. Kennedy*, Acting General Counsel; and *Mary Ann Flynn*, Assistant General Counsel, were on the pleading, all of Washington, D.C., for the appellee.

*Samuel W. Apicelli*, of Philadelphia, Pennsylvania, and *Steve Berenson*, of San Diego, California, were on the pleading for Steve Berenson, Brian Clauss, Angela K. Drake, Kristine A. Huskey, James C. May, Hugh McClean, Laurie Forbes Neff, Mathew Randle, Patricia E. Roberts, Susan Saidel, Stacey-Rae Simcox, Aniela Szymanski, Michael J. Wishnie, Connecticut Veterans Legal Center, and the National Veterans Legal Services Program as amici curiae.

*Paul W. Browning*, of Washington, DC, and *Daniel C. Cooley*, of Reston, Virginia, were on the pleading for Clinical Legal Education Association as amicus curiae.

Before MOORMAN, SCHOELEN, and BARTLEY, *Judges*.

MOORMAN, *Judge*:  Before the Court is the appellant's application for an award of $11,654.23 for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  The Secretary filed a response in opposition to that application.  The EAJA application satisfies the EAJA pleading requirements.  28 U.S.C. § 2412(d)(1)(b).  The appellant asserts that he is a prevailing party, that he is eligible for an award based on his net worth, and that the Secretary's position was not substantially justified; and his EAJA application includes a list of

fees and expenses sought. *See Scarborough v. Principi*, 541 U.S. 401 (2004). The Secretary does not contest the appellant's eligibility for an EAJA award. The Secretary opposes the application only to the extent the appellant seeks fees for work performed by law students of the Legal Services Center of Harvard Law School. For the reasons that follow, the Court will grant the application in part.

## I. BACKGROUND

This application stems from an appeal of a November 2, 2012, decision of the Board of Veterans' Appeals (Board) that denied the appellant's claim for entitlement to an initial disability rating in excess of 50% for his service-connected post-traumatic stress disorder prior to August 21, 2009, and granted a 70% disability rating as of August 21, 2009. Record (R.) at 3-21. On February 18, 2014, the Court issued a memorandum decision vacating the Board's decision and remanding the matter for readjudication. *Froio v. Shinseki*, No. 12-3483, 2014 WL 594096 (U.S. Vet. App. Feb. 18, 2014). The Court held that the Board clearly erred in failing to consider and dispose of the appellant's reasonably raised issue of entitlement to a total disability rating based upon individual unemployability. *Id*. The Court also held that the Board erred in failing to obtain the appellant's Social Security Administration records before it adjudicated his claim. *Id*.

The appellant is represented by the law firm of Chisholm Chisholm & Kilpatrick (Chisholm) and the Legal Services Center of Harvard Law School. The appellant entered into a fee agreement with Chisholm in November 2012. The fee agreement states that Chisholm "shall only charge a fee to the [appellant] in the event of successful representation at the Court" and that "no fee shall be sought from the [appellant] except through an application for EAJA fees to the Court." In February 2013, the appellant executed another fee agreement with the Chisholm firm. This second fee agreement is identical to the November 2012 fee agreement, except for an additional clause in which the appellant consented to "participation in this case of law students from Harvard Law School's Legal Services Center who will serve as co-counsel in this matter with [Chisholm]." The fee agreement stated that Chisholm would continue to act as lead counsel. Law students are permitted to appear before this Court pursuant to Rule 46(b)(1)(G) of our Rules of Practice and Procedure.

On June 11, 2014, the appellant filed a timely application for fees and expenses pursuant to EAJA. The appellant's application seeks fees and expenses in the amount of $11,654.23, which includes fees for work performed by four law school students participating in Harvard's clinical legal services program, and their supervising attorney. The Secretary filed a response in opposition to the appellant's EAJA application, arguing that work performed in an academic setting should not be reimbursed pursuant to EAJA. The appellant filed a reply in support of his application. In January 2015, the Court granted the motion of Steve Berenson, Brian Clauss, Angela K. Drake, Kristine A. Huskey, James C. May, Hugh McClean, Laurie Forbes Neff, Mathew Randle, Patricia E. Roberts, Susan Saidel, Stacey-Rae Simcox, Aniela Szymanski, Michael J. Wishnie, Connecticut Veterans Legal Center, and the National Veterans Legal Services Program for leave to file an amici curiae brief in support of the appellant's EAJA application. The Court also granted the motion of the Clinical Legal Education Association for leave to file an amicus curiae brief. The amici filed their briefs on January 14, 2015, and January 16, 2015, respectively.

## II. ANALYSIS

This Court has jurisdiction to award attorney fees pursuant to 28 U.S.C. § 2412(d)(2)(F). The appellant's EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B), and the application meets the statutory content requirements because it contains (1) a showing that the appellant is a prevailing party; (2) a showing that he is a party eligible for an award because his net worth does not exceed $2,000,000; (3) an allegation that the Secretary's position was not substantially justified; and (4) an itemized statement of the attorney fees and expenses sought. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough*, 541 U.S. at 408.

The Secretary does not dispute, and the Court finds, that the appellant is a prevailing party. *See Sumner v. Principi*, 15 Vet.App. 256, 264-65 (2001) (en banc), *aff'd sub nom. Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003). The Secretary also does not dispute the appellant's allegation that the position of the Secretary was not substantially justified; accordingly, the Court need not further address this issue. *See Cullens v. Gober*, 14 Vet.App. 234, 237 (2001) (en banc) (once an appellant alleges no substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in administrative and litigation positions); *see also Cook v. Brown*,

3

6 Vet.App. 226, 237 (1994) (the Court need not address whether the Secretary's position was "substantially justified" when the Secretary does not assert such a defense, but expressly concedes the issue), *aff'd*, 68 F.3d 447 (Fed. Cir.1995). Accordingly, the Court concludes that the appellant is entitled to an EAJA award.

The Secretary opposes awarding EAJA fees to the appellant for work performed by law students as part of the educational law school clinic at Harvard Law School. Although the Secretary concedes that fees can be awarded pursuant to EAJA for work performed by law students, the Secretary argues that fees should not be awarded for work performed by law students in an educational setting, i.e., as part of a clinical educational program in furtherance of their academic interests. The Secretary also argues that, should the Court "extend" EAJA to permit such an award, the Court should ensure that any award of fees does not result in a financial windfall to Harvard Law School. Finally, the Secretary argues that an award of attorney fees pursuant to EAJA for work performed by the Legal Services Center of Harvard Law School does not further the purpose of EAJA nor does a denial of such fees defeat EAJA's goals.

*1.*

"Congress passed the EAJA in response to its concern that persons 'may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing vindication of their rights.'" *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989). "'The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjustified government action. Veterans are among the types of individuals the statute was intended to help.'" *Abbs v. Principi*, 237 F.3d 1342, 1347 (Fed. Cir. 2001) (quoting H.R. REP. NO. 102-1006, at 25 (1992), 1992 U.S.C.C.A.N., 3921, 3934. "EAJA applies, and its central policy is of particular significance, in the 'uniquely pro-claimant' system for adjudicating veterans' claims for benefits" because EAJA "'helps to ensure that [veterans] will seek an appeal when the [Department of Veterans Affairs] has failed in its duty to aid them or has otherwise erroneously denied them the benefits that they have earned.'" *Wagner v. Shinseki*, 733 F.3d 1343, 1344 (Fed. Cir. 2013) (alterations in original) (quoting *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed.Cir.2006)). This Court has recognized that "attorneys who represent veterans and their survivors provide value

4

both to their clients and to the courts before which they practice" and has expressed its intention to encourage that representation. *Golden v. Gibson*, 27 Vet.App. 1, 6 (2014).

In furtherance of the purposes of EAJA and encouraging the availability of legal representation of high quality for veterans, this Court has consistently held that fees should be awarded pursuant to EAJA to an otherwise eligible appellant for work performed by legal services organizations and counsel appearing pro bono. *Stillwell v. Brown*, 6 Vet.App. 291, 298-99 (1994) (citing *Phillips v. GSA*, 924 F.2d 1577, 1583 n.4 (Fed. Cir. 1991)) (the fact that the appellant incurred no fees or expenses because she was represented on a pro bono basis does not preclude an EAJA award). It is also well settled that attorney fees can be awarded pursuant to EAJA for work performed by attorney-supervised nonattorneys and law students. *Sandoval v. Brown*, 9 Vet.App. 226, 230 (1996).

> The Supreme Court, and lower courts, have approved the inclusion of fees for paralegals, law clerks, and law students, in fee awards under EAJA or analogous fee-shifting statutes, on the theory that their work contributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs.

*Cook v. Brown*, 68 F.3d 447, 453 (Fed. Cir. 1995).

*2.*

The Secretary does not challenge this Court's long standing practice of awarding fees pursuant to EAJA for work performed by law students or for work performed when a fee has not, in fact, been charged to the appellant. The fees challenged by the Secretary in this matter are for work performed by law students supervised by licensed attorneys who represented the appellant on a pro bono basis. Pursuant to our caselaw, therefore, the challenged fees are authorized under EAJA. The Secretary, however, seeks a categorical exclusion from the award of EAJA fees for pro bono work performed by law students in what the Secretary has defined as an "educational setting" as opposed to a "marketplace setting." The Secretary urges that EAJA's waiver of sovereign immunity is limited to fees incurred in the marketplace and that the statute does not expressly extend that waiver to fees incurred in an educational setting. *See Jones v. West*, 13 Vet.App. 129 (1999) (EAJA is a waiver of sovereign immunity and therefore should be strictly construed in the Government's

favor). *But see Richlin v. Chertoff*, 553 U.S. 571, 589 (2008) ("The sovereign immunity canon is just that–a canon of construction.").

The Secretary argues that fees should not be awarded for the Harvard law students' work because it was performed in an educational setting, in furtherance of the students' legal education, as opposed to being performed in an employment setting. The Secretary emphasizes that in performing the work as part of a clinical legal program, the students obtained academic credit and practical legal experience, and that participation in the clinic fulfilled academic requirements and may have fulfilled, in whole or part, a requirement that Harvard law students perform 40 hours of pro bono work before graduation. Accordingly, the Secretary argues that "[t]he law students who participated in the law clinic as part of their educational experience did not provide 'the same services that a licensed attorney or experienced non-attorney practitioner would provide.'" Secretary's Response at 7 (quoting EAJA Application at 12-13). Although the Secretary acknowledges that the appellant benefitted from the law students' work, the Secretary maintains that the "assistance provided to [the a]ppellant was performed as part of a learning experience and was simply a byproduct of the educational undertakings by the students and is not properly billed to the Government under the EAJA." *Id.*

At oral argument, the Secretary further explained this theory, urging that EAJA authorizes only fees incurred in a "marketplace" setting and that the work performed by the law students could not be sold in the marketplace and, therefore, was purely educational. When asked at oral argument whether a law school student earning academic credit for working at a law firm would be eligible for EAJA fees, the Secretary stated that, in determining the answer to this question, the facts would be "very important." *Froio v. McDonald*, U.S. Vet. App. No. 12-3483(E), Oral Argument at 48:41 - 49:24 (May 6, 2015), *available at* http://www.uscourts.cavc.gov/oral-arguments_audio.php. He explained: "If ultimately [a law student's work] was performed in an educational environment out of an academic obligation, then the Secretary's position would likely" be that the work would not be eligible for EAJA fees. *Id.* However, "[i]f [the work] was not and the receipt of credit was simply the byproduct of the students' participation in the marketplace," then the Secretary would likely not oppose EAJA fees. *Id.*

The appellant does not dispute that the law students worked in an academic setting. He argues that the educational nature of the work, however, does not preclude payment of fees under EAJA for work performed in support of his appeal.

The Secretary's argument is primarily based upon the premise that because the law students received personal educational benefit from representing the appellant, their work may no longer be considered marketable work warranting legal fees. The Secretary argues "the general acceptance that an appellant may seek to recover fees for work performed by law school students even though they are not attorneys is predicated on the assumption that law school students for whose work attorney fees are sought were acting in an employment capacity performing tasks in lieu of a full-fledged attorney." Secretary's Response at 4-5 (citing *Cook*, 68 F.3d at 453). Notwithstanding the Secretary's suggestion to the contrary, nothing in the U.S. Court of Appeals for the Federal Circuit's decision in *Cook* suggests that working in an "employment capacity" is a requirement for reimbursement under EAJA. The Secretary is correct that the premise upon which EAJA fees can be awarded is that the tasks performed by the law students will be "in lieu of a full-fledged attorney." *Id*. It simply does not follow, however, that the mere fact that the law students' work also benefitted their legal education prevented that work from *also* "contribut[ing] to their supervising attorney's work product," "thereby lowering overall litigation costs." *Cook*, 68 F.3d at 453.

The Secretary maintained at oral argument that, because EAJA is a waiver of sovereign immunity, it is the appellant's burden to establish that EAJA expressly allows an award for work performed in an educational setting and the Secretary need not demonstrate that EAJA precludes such an award. The Court disagrees. In holding that EAJA fees may be awarded for work performed by paralegals, notwithstanding that the language of EAJA only provides for "attorney fees," the U.S. Supreme Court held when "traditional tools of statutory construction and considerations of stare decisis compel the conclusion that paralegal fees are recoverable as attorney's fees at their 'prevailing market rates' . . . [t]here is no need for [the Court] to resort to the sovereign immunity canon because there is no ambiguity left for us to construe." *Richlin*, 533 U.S. at 589.

The Secretary further suggests that the word "fee" itself contemplates only services that are available in the marketplace. Nothing in the language of EAJA, or the word "fee" limits an award to work performed in an "employment" or "marketplace" setting. The Secretary cites no case in this

7

Court or in any other jurisdiction, and the Court is unaware of any such case, that recognizes the distinction the Secretary attempts to create between work performed in a "marketplace setting" and the same work performed in an "educational setting." Moreover, the Secretary's theory is directly contradicted by the well-settled caselaw that allows the award of EAJA fees in cases where no actual "fee" was incurred, in the case of pro bono representation, *see Stillwell*, 6 Vet.App. at 298-99 (the fact that the appellant incurred no fees or expenses because she was represented on a pro bono basis does not preclude an EAJA award), and in cases where the work was performed by persons who are not attorneys, that is, by paralegals and law students, *see Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar."); *Cook*, 68 F.3d at 453; *Sandoval*, 9 Vet.App. at 230. There is no factual or legal basis for the Secretary's attempt to arbitrarily classify the work performed by the Harvard law students in this case as outside the legal marketplace. The Court finds the plain language of EAJA, recognized by the body of caselaw interpreting EAJA, to be dispositive, and therefore, there is no need to accept the Secretary's invitation to resort to the sovereign immunity canon to create a unique limitation on recovery of fees for work performed in the Nation's law school clinics by attorney-supervised law students. *See Richlin, supra*.

The Secretary argues that "[n]either this Court nor any other court of relevant jurisdiction has ever extended EAJA to permit the recovery of attorney fees for work performed by law school students in an academic setting, as part of their mandatory legal education." Secretary's Response at 1. However, the Secretary has not cited any case, in any jurisdiction, that has denied fees under EAJA, or any similar statute, on that basis. In fact, in each of the cases cited by the Secretary, fees were awarded for clinic students' work. *See Lopez v. XTEl Constr. Grp., LLC*, 838 F. Supp. 2d 346 (D. Md. 2012) (awarding fees for work of law students working in a law school clinical program, but reducing hours billed that could be attributed to the students' "education"); *Elashi v. Sabol*, No. 4:09-CV, 2010 WL 4536774, at *5 (M.D. Pa. Nov. 2, 2010) ("[A] legal service organization can obtain a fee award for the work of uncompensated law-students, regardless of their receipt of academic credit for their services."); *DiGennaro v. Bowen*, 666 F. Supp. 426, 430 (E.D.N.Y. 1987) ("We see no reason to deny a fee award . . . for the supervised hours reasonably expended by uncompensated law-students working in a clinical facility, despite their receipt of academic credit.").

8

The Secretary invites this Court to be the first to categorically exclude EAJA fees for work performed by law students in law school clinic programs. The Court finds the availability of free clinical legal programs to be of value to both the veterans they represent and to this Court, and we will not discourage such representation by arbitrarily limiting an EAJA award based upon the artificial categorizations the Secretary attempts to create. As noted above, EAJA's central goal of eliminating financial deterrents to individuals attempting to defend themselves against unjustified Government action "is of particular significance, in the 'uniquely pro-claimant' system for adjudicating veterans' claims for benefits." *Wagner*, 733 F.3d at 1344.

*3.*

The Secretary argues that, should the Court hold that EAJA authorizes the award of attorney fees for work performed by the law students in this matter, "the Court should ensure that any award of fees does not result in a financial windfall to Harvard Law School." Secretary's Response at 13. The Secretary suggests that Harvard Law School's status as a tax-exempt organization, which allows it to receive a tax benefit from the Federal Government, as well as the fact that Harvard collects tuition from its students, renders the award of EAJA fees a windfall to the university.

The U.S. Supreme Court has cautioned that attorney fee awards are meant to support the goals of the underlying statutes, but should not result in financial windfalls to attorneys. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). However, in determining whether the award would amount to a windfall, the Supreme Court questioned the relationship between the prevailing party's degree of success and the amount of the fees sought. *Farrar*, 506 U.S. at 116 (O'Connor, J., concurring) (an award of one dollar from one defendant, after filing a lawsuit demanding 17 million dollars from 6 defendants, 10 years of litigation, and 2 trips to the Court of Appeals "is simply not the type of victory that merits an award of attorney's fees"). In stark contrast, the Secretary here argues that the legal and economic status of the organization making the attorney's services available may create a windfall.

The courts have routinely awarded attorney fees for work performed by legal services organizations and pro bono counsel in general. *See Stillwell*, 6 Vet.App. at 299. The Secretary emphasizes this point and makes clear that he is not challenging this practice. Secretary's Response at 14. The Secretary argues, however, that the Legal Services Center of Harvard Law School "does

9

not appear to be the type of legal services organization or pro bono counsel contemplated by caselaw which has authorized that such fees be granted." *Id*. at 15. The Secretary suggests that "there is no indication . . . that Harvard Law School, or its law clinic, depends on the revenue derived from its pro bono representation to support its ongoing representation of low and moderate-income veterans and their families" and even notes that "Harvard University is one of the wealthiest in the world." *Id*. at 16.

Even if the Court were to presume as true all the Secretary's assertions as to Harvard Law School's financial status, tax-exempt status, and its ability to sustain pro bono representation of veterans without the potential to receive EAJA fees, the Court finds these facts completely irrelevant.[1] The Secretary's argument ignores the fact that EAJA fees are awarded to the litigant, not the attorney. *See Astrue v. Ratliff*, 560 U.S. 586, 593 (2010); *Shaw v. Gober*, 10 Vet.App. 498, 506 (1997). It is the client's financial status that is relevant, not the attorney's. *See* 28 U.S.C. § 2412(d)(2)(B). Nothing in the EAJA statute or any cases cited by the Secretary suggests that a prevailing party's entitlement to an award of attorneys fees and expenses is contingent upon the identity or need of the party's attorney. Moreover, the Secretary's theory would put this Court in the position of having to investigate the financial status of every law firm, legal services organization, and law school clinic, and presumably condition any EAJA award on the organization's need for the funds. Clearly such an approach is not contemplated by EAJA. The long standing practice of awarding EAJA fees for work performed by organizations that provide legal services free of charge encourages pro bono representation and has increased the availability of qualified representation to veterans free of charge. *See, e.g., S.E.C. v. Comserv Corp.*, 908 F.2d 1407, 1415 (8th Cir. 1990) ("[A]ssisting in the financing of the pro bono representation effort, EAJA unquestionably contributes to removing the deterrent effect of fees for those pro bono-dependent clients and thereby increases the incidence of deserving representation."). To subject each and every pro bono organization to the

---

[1] The Court notes that the appellant and the amici have set forth persuasive arguments in their briefs demonstrating how the Legal Services Center of Harvard Law School and law school clinics in general do rely on EAJA fees to continue to support their efforts to assist veterans. However, we note that because our holding today does not require such organizations to prove their motives or need for reimbursement of fees, we make no finding as to Harvard's financial status or the law clinic's reliance upon the collection of EAJA fees. The Court commends Harvard's Legal Services Center and similar organizations and the work they do for veterans.

10

scrutiny the Secretary's theory would undoubtedly have a chilling effect on the availability of qualified legal services, free of charge, to deserving veterans.

*4.*

The Secretary asserts that an award of attorney fees pursuant to EAJA for work performed by the Legal Services Center of Harvard Law School does not further the purpose of EAJA nor does a denial of such fees defeat its goals. The Secretary relies upon the unsubstantiated assumption that the Harvard Law School Legal Services Center "does not appear to rely on income generated by its pro bono representation services" and that "the clinic will continue to provide its services regardless of whether it is awarded attorney fees for those services." Secretary's Response at 20. The Secretary concludes, "[b]ased on that assumption, it is clear that a denial of an award of fees for service hours expended by Harvard Law School will not deter veterans in their pursuit of justice against the Secretary." *Id*.

Again, even if the Court were to presume the Secretary's basic assumptions were true, to hinge the *appellant's award* upon the identity of the organization that performed the services would subject all legal services organizations to the same scrutiny. Pro bono veterans legal services organizations have assisted many veterans in obtaining free legal representation of high quality before this Court. Although some organizations, such as "wealthy" law schools or large, successful law firms, may very well be able to continue to provide legal services to veterans without the availability of EAJA fees, there can be no doubt that the possibility of recovering fees for unjustified Government action promotes and encourages all organizations that provide services to veterans. The Court will not chill that effect by now curbing an otherwise eligible appellant's right to collect EAJA fees based upon the identity or financial status of the attorney, firm, or organization that has provided the legal services, particularly where services were provided on no basis other than the mere possibility of the veteran's prevailing against a Secretarial administrative or appellate position that lacks substantial justification. EAJA does not seek to compensate only those who oppose unjustified Government action by enlisting the aid of understaffed and underfunded pro bono programs and EAJA does not seek to punish profitable law firms for their generosity in assisting those who possess little power to assert their rights against the Federal bureaucracy.

11

*5.*

Although the Secretary cites *Lopez, supra*, in support of his theory that fees cannot be awarded in this case, *Lopez* illustrates the proper focus in considering an award of EAJA fees for work performed by law students in a clinical program–the reasonableness of the fees. "In determining the number of hours which were 'reasonably spent' [on the litigation], the Court may consider a number of factors, including whether the work performed was duplicative, [whether] an attorney takes extra time due to inexperience, or [whether] an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys." *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997) (citing *Sandoval, supra*). In *Lopez*, although the court awarded fees for work performed by law students receiving academic credit in a law school clinic, the court reduced some of the hours billed that the court determined were attributable solely to the students' education. *Lopez*, 838 F. Supp. 2d at 353.

Recognizing this, the appellant, in the case now before the Court, indicated in his EAJA application that he reduced the hours billed for some of the law students' work taking into account their inexperience and possibly duplicative work, as well as the time billed by their supervising attorneys "in order to avoid claiming time spent educating students." EAJA Application at 13. The Secretary argues that the billing statement reflects, however, that the appellant seeks to recover fees for work performed by Daniel L. Nagin of the Legal Services Center of Harvard Law School and Zachary M. Stolz of Chisholm for supervision of the law students. Secretary's Response at 12. The Secretary also notes that the appellant seeks to recover fees for work performed by Mr. Stolz in reviewing Mr. Nagin's work. *Id*. The Court agrees that this work is duplicative. Accordingly, the Court will reduce the hours requested for work performed by Mr. Stolz by 5 hours.

### III.  CONCLUSION

Upon consideration of the foregoing and the pleadings of the parties, the appellant's EAJA application is GRANTED IN PART.