**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 20-7820(E)

MARCOS GREENIDGE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the United States Court of Appeals for the Federal Circuit

(Argued November 30, 2023                    Decided May 31, 2024)

*Kenneth M. Carpenter* of Topeka, Kansas, with whom *Michael S. Just*, of Providence, Rhode Island, was on the brief, for the appellant.

*Mark D. Vichich*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Megan C. Kral*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, TOTH, and JAQUITH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

TOTH, *Judge*: This Court has held that it lacks jurisdiction to award attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1), after it sets aside a Board decision for lack of jurisdiction. *Burkhardt v. West*, No. 96-0721, 1998 WL 831421, 16 Vet.App. 301 (1998) (table), *aff'd sub nom. Burkhardt v. Gober*, 232 F.3d 1363 (Fed. Cir. 2000). Relying on this holding, a single-judge memorandum decision dismissed veteran Marcos Greenidge's EAJA application. That decision was appealed to the Federal Circuit.

Prompted by a motion from the Secretary, the Federal Circuit remanded the case for this Court to reconsider its decision in light of *Halpern v. Principi*, 313 F.3d 1364 (Fed. Cir. 2002) (*Halpern II*), *rev'g Halpern v. Principi*, 15 Vet.App 416 (2002) (*Halpern I*), which held that the Court's authority to award EAJA fees and expenses is tied to the proper exercise of its appellate jurisdiction under 38 U.S.C. § 7252(a) and is not contingent upon whether the Board properly exercised its own jurisdiction in its underlying decision. After submitting the case to a panel and holding oral argument, we now conclude that the Court's memorandum decision dismissing Mr. Greenidge's EAJA application was erroneous. The Court possessed jurisdiction to entertain the

challenge to the Board's exercise of its jurisdiction and so had authority under section 2412(d)(1)(A) to consider the merits of the EAJA application. To the extent that this Court's caselaw ever suggested that our authority to entertain an EAJA application was contingent on the Court having jurisdiction over the *merits* of a matter improperly adjudicated in a Board decision, the Federal Circuit has repudiated that suggestion.

Unfortunately, there stands an additional hurdle that Mr. Greenidge must clear to obtain attorney fees and expenses under EAJA: He must show that he is a prevailing party. And in the circumstances of this case, he has not. He did not receive a remand from this Court that either clearly called for further VA proceedings or materially altered his legal relationship vis-à-vis the Secretary. Thus, in accordance with governing precedent, we deny the EAJA application.

## I. BACKGROUND

In 1993, a VA regional office (RO) awarded Mr. Greenidge service connection for PTSD and assigned an initial 10% rating. The veteran never appealed, and that decision became final. Years later, he sought to revise the rating decision on grounds that it was the product of clear and unmistakable error (CUE). In May 2020, the RO denied the CUE motion. But before the veteran could file a Notice of Disagreement (NOD), the Board adjudicated the CUE motion on its own volition in October 2020 and denied revision of the 1993 decision. The veteran did not file an NOD challenging the RO's CUE determination until January 2021, well after the Board had issued its decision on the matter.

But before that NOD was filed, the veteran appealed the Board decision to this Court. On appeal, the parties agreed that the Board lacked jurisdiction to adjudicate the CUE motion because Mr. Greenidge had yet to file an NOD challenging the RO's adverse May 2020 decision. Without an NOD, the Board had no authority to consider the matter. *See* 38 U.S.C. § 7105(a) ("Appellate review shall be initiated by the filing of a notice of disagreement."); *Grantham v. Brown*, 114 F.3d 1156, 1159 (Fed. Cir. 1997) (explaining that an "NOD creates jurisdiction" for the Board over an issue because it "initiate[s] appellate review of the issue"). As a remedy, the Court vacated the Board decision and dismissed the appeal rather than remanding the case to the Board. In so doing, the Court cited *Braan v. McDonald*, 28 Vet.App. 232 (2016), for the proposition that, "if the Board issues a decision without jurisdiction, this Court also lacks jurisdiction and, thus, does not have

the authority to remand."[1] *Greenidge v. McDonough*, No. 20-7820, 2022 WL 575165, at *1 (Vet. App. Feb. 25, 2022). Since the veteran had by that time a properly initiated appeal pending before the Board, the Court concluded it was appropriate "to vacate the Board's decision and let the pending appeal move forward." *Id.*; *see* Reply Br. at 1–2 (agreeing that vacatur without remand was appropriate). Accordingly, the Court vacated the Board decision and dismissed the appeal.

Mr. Greenidge then applied for EAJA fees and expenses. Opposing the application, the Secretary cited the Federal Circuit's *Burkhardt* decision and other caselaw to argue that, once the Court held that it lacked jurisdiction and dismissed the appeal, it lacked the authority to grant an EAJA award. In so arguing, the Secretary contended that *Halpern II* was distinguishable. He also argued that the veteran did not qualify as a prevailing party. Mr. Greenidge disputed the Secretary's arguments but did not mention *Halpern II*. The Court agreed with the Secretary that *Burkhardt* governed and—without addressing *Halpern II*—dismissed the EAJA application for lack of jurisdiction. *Greenidge v. McDonough*, No. 20-7820(E), 2022 WL 11163723, at *2–3 (Vet. App. Oct. 19, 2022). Given this disposition, the Court did not address prevailing party status.

On appeal to the Federal Circuit, the veteran again did not cite *Halpern II* in his opening brief. The Secretary, however, moved to remand the case to this Court on the basis of that decision. The Federal Circuit granted the motion, giving this Court "the opportunity to 'address the effects, if any, of [*Halpern II*], and other relevant binding precedent on [the] decision, and, if appropriate, to address in the first instance whether [Marcos] Greenidge qualifies as a prevailing party for the purposes of EAJA.'" *Greenidge v. McDonough*, No. 23-1445, 2023 WL 5286566, at *1 (Fed. Cir. Aug. 17, 2023), quoting the Secretary's motion at 5 (second and third alterations in the original). On remand, the case was referred to a panel to determine the proper disposition of Mr. Greenidge's EAJA application.

## II. ANALYSIS

Courts have often been "profligate" when using the terms "jurisdiction" or "jurisdictional," giving them "many, too many, meanings." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006). Used properly, "the word 'jurisdictional' is generally reserved for prescriptions delineating the

---

[1] The memorandum decision's language may not have made clear *Braan*'s conclusion that, because the Board's decision on the issue before it was "ultra vires," the Court "lack[ed] jurisdiction over the *merits* of the appeal." 28 Vet.App. at 239 (emphasis added). As will be discussed later, this qualification is important.

classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1848 (2019). "A limitation on subject matter jurisdiction . . . restricts a court's 'power to adjudicate a case.'" *Biden v. Texas*, 597 U.S. 785, 798 (2022) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). From this it follows that a court cannot disclaim subject matter jurisdiction over a case and yet purport to order relief on a case's merits. *See, e.g.*, *Cornell v. McDonald*, 28 Vet.App. 297, 303 (2016).

EAJA authorizes a court to award a prevailing party attorney fees and expenses "incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States in any court having *jurisdiction* of that action." 28 U.S.C. § 2412(d)(1)(A), (2)(F) (emphasis added). Congress gave this Court EAJA authority in 1992. *Jones v. Brown*, 41 F.3d 634, 635–37 (Fed. Cir. 1994). It is undisputed that the word "jurisdiction" in § 2412(d)(1)(A) refers to a court's subject matter jurisdiction—its "power to hear and decide the action." *Burkhardt*, 232 F.3d at 1367; *see Hudson*, 260 F.3d at 1363 (collecting cases). It is likewise undisputed that this Court has been granted "exclusive jurisdiction . . . to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a). When exercising this jurisdiction, the Court must, among other things, "hold unlawful and set aside decisions" of the Board that are "in excess of statutory jurisdiction, authority, or limitations." 38 U.S.C. § 7261(a)(3)(C).

In both the *Burkhardt* and *Halpern* cases, this Court held that it lacked jurisdiction to grant an EAJA application after concluding that the Board lacked the power to issue the decisions under review. The Federal Circuit affirmed our judgment in *Burkhardt* but two years later reversed our judgment in *Halpern*. Although the Federal Circuit's decisions may initially appear to be in tension, they are in fact easily reconcilable. And in explaining why this is so, we take cognizance of a principle firmly established in *Halpern II* but not always observed in our caselaw—that our EAJA jurisdiction isn't defeated by a conclusion that the Board issued an unauthorized, or "ultra vires," decision. Rather, when our review is properly invoked to consider whether the Board stayed within its own jurisdictional bounds, we are exercising the "jurisdiction" over a "civil action" that section 2412(d)(1)(A) says is necessary before we are authorized to award EAJA fees and expenses. We think it useful to explain how the development of our EAJA caselaw obscured this principle. Having concluded that we may consider the substance of Mr. Greenidge's EAJA application, however, we ultimately conclude that he does not qualify as a prevailing party.

4

A. *Jurisdiction Under EAJA*

When a court realizes that caselaw has led it down the wrong path and retraces its steps, it often finds that the detour began with a relatively sound decision. In *Heath v. West*, 11 Vet.App. 400 (1998), *aff'd per curiam*, 215 F.3d 1342 (Fed. Cir. 1999) (table), the Court considered its authority to grant EAJA fees and expenses in connection with its adjudication of petitions. The veteran in that case had filed a petition for a writ of mandamus ordering the Secretary to pay him monies the Secretary had been withholding. The litigation appeared to induce favorable action by the Secretary, but the Court did not order any relief and denied the petition. Mr. Heath thereafter filed an EAJA application to recoup attorney fees and expenses in bringing the action. This application prompted the Court to reconsider the prior disposition, leading us to conclude that the petition should have been dismissed rather than denied because the Court had no original jurisdiction (or authority) to compel payment of attorney fees in the circumstances. *Id.* at 402.

Then, analogizing EAJA to the All Writs Act, which governs adjudication of petitions, *Heath* noted that EAJA does not contain an independent grant of jurisdiction and so cannot expand a court's jurisdiction beyond that set out by Congress in the court's organic statute. For this reason, *Heath* held that the "Court may not award EAJA fees unless it had jurisdiction to award the relief requested during the merits litigation." *Id.* at 403. The proper course of action, per *Heath*, is to dismiss the EAJA application for lack of jurisdiction when "the Court lack[s] jurisdiction to award the relief requested in the petitioner's petition." *Id.* at 404. Ultimately, *Heath* held that, because the Court did not properly have jurisdiction to award relief on the merits in the underlying petition, the Court also lacked authority to grant EAJA fees.

*Heath* addressed petitions; *Burkhardt v. Gober*, No. 96-0721, 1997 WL 786976 (Vet. App. Oct. 27, 1997), took a step further and imported *Heath*'s reasoning into EAJA requests following appeals to the Court. The facts are significant to understanding the disposition. In *Burkhardt*, the veteran challenged a Board decision concluding that neither of two RO decisions—one from April 1946 and the other from June 1946—was the product of CUE. *Id.* at *2. On appeal, the Court affirmed the Board as to the April 1946 decision. *Id.* at *3. But the Court agreed with the veteran that the Board erred in finding that the June 1946 decision was final because the veteran hadn't received proper notice of it. As a result of the decision's nonfinality, a CUE challenge could not be properly lodged against it, and the claim at issue in the decision remained "pending before the RO." *Id.* at *4. But finding the Board's adjudication of the motion with respect to the June 1946

decision harmless, the Court simply noted the continued pendency of the matter before the RO and, without vacating any portion of the Board decision, dismissed the appeal as to CUE in the June 1946 decision "for lack of jurisdiction." *Id.* (This disposition seems to have been in accordance with governing caselaw at the time. *See generally Best v. Brown*, 10 Vet.App. 322 (1997).)

Mr. Burkhardt never appealed or otherwise challenged the Court's resolution of the principal phase of his appeal. But he did seek an EAJA award. Citing *Heath*, the Court denied EAJA fees and expenses, reasoning that "[w]here the Court dismisses an appeal because it lacks jurisdiction to award the relief sought by an appellant, it also lacks jurisdiction to consider an EAJA application filed with respect to the dismissed appeal." *Burkhardt v. West*, No. 96-0721, 1998 WL 831421, at *1 (Vet. App. Nov. 9, 1998) (table). This decision was appealed, however.

On appeal, the Federal Circuit found "clear and unambiguous" section 2412(d)(1)(A)'s language "having jurisdiction of that action"; that language, the court concluded, "limit[ed] the reach of the EAJA to extend only to fees and other expenses incurred before a court having the power to hear and decide the underlying civil action giving rise to the fees and other expenses that are the subject of the EAJA application." *Burkhardt*, 232 F.3d at 1368. The Federal Circuit therefore affirmed our dismissal of the EAJA application.

In hindsight, *Burkhardt* is also important for what it did *not* decide. The Federal Circuit had accepted for purposes of the EAJA appeal this Court's conclusion during the principal phase of the case that it did not have subject matter jurisdiction. This Court's "final determination . . . that it lacked such power over Burkhardt's appeal relating to the June 1946 rating decision" was "not the subject of [the present] appeal." *Id.*; *see also id.* at 1368 n.3 ("The Court of Appeals for Veterans Claims' decision that it lacked jurisdiction over Burkhardt's appeal of the BVA's finding of no CUE in the June 1946 rating decision is final because Burkhardt did not appeal it.").

The outcome of similar appeals taken to the Federal Circuit in the *Hudson* and *Halpern* litigation was quite different. The facts underlying *Hudson* are complicated and need not be recounted. It suffices to say that this Court dismissed the appeal after concluding that a procedural error by VA deprived it of jurisdiction. *Hudson v. West*, No. 97-1220, 1999 WL 554228, at *3 (Vet. App. July 20, 1999). Before dismissing, however, the Court nonetheless observed that the Board "erred by failing to adjudicate" the appellant's administrative appeal, that the relevant claim was "still in appellate status before the Board," and that "the Board is required by statute to

6

adjudicate the merits of the appellant's claim" and to consider all the relevant evidence submitted on such claim. *Id.* The Court further directed: "If the Board decides that the appellant has submitted new and material evidence to reopen his claim, the Board will then proceed to adjudicate his claim on the merits by first determining whether the appellant has submitted a well-grounded claim." *Id.* When the appellant applied for EAJA fees and expenses, the Court dismissed the application on the ground that the Court did not have jurisdiction over the appeal of the Board decision and thus did not have jurisdiction to consider an EAJA award. *Hudson v. West*, 13 Vet.App. 470, 471–72 (2000) (citing *Heath*).

As in *Burkhardt*, an appeal was not taken to the Federal Circuit as to this Court's principal decision but was as to this Court's EAJA decision. Unlike in *Burkhardt*, however, the Federal Circuit deemed it appropriate within the context of the EAJA appeal to review this Court's original jurisdictional ruling. *Hudson*, 260 F.3d at 1363–64 (discussing the law of the case doctrine). And on such review, the Federal Circuit determined that our "jurisdictional holding was erroneous" since the "proper remedy" for the procedural error this Court had noted was "to remand to the Board, not to dismiss for lack of jurisdiction." *Id.* at 1362. Moreover, the Federal Circuit concluded that the Court's purported dismissal for lack of jurisdiction "did not function as a dismissal at all" and instead "was effectively a remand" for "Board adjudication on the merits." *Id.* at 1362–63.

Critically, *Hudson* endorsed *Burkhardt*'s interpretation of the EAJA statute and agreed "that there cannot be an award of attorneys' fees unless the court has jurisdiction of the action." *Id.* at 1363. But *Hudson* distinguished the outcome in *Burkhardt* because that case did not "involve[ ] a claim that the original [i.e., principal phase] jurisdiction decision was erroneous." *Id.* Whereas in *Hudson*, the Federal Circuit concluded that this Court *did* have jurisdiction of the underlying action. And in so concluding, the *Hudson* court highlighted the incoherent conception of jurisdiction in this Court's principal decision, whereby the Court simultaneously disclaimed any power to act and yet ordered relief by instructing the Board to undertake certain actions.

Six months after the Federal Circuit issued *Hudson*, we issued our EAJA decision in Mr. Halpern's case and took our reasoning from the *Hudson* case a step further. We had vacated a Board decision that Mr. Halpern, an attorney, was ineligible for direct payment of a contingency fee and remanded the matter to the Board with instructions to dismiss. *Halpern I*, 15 Vet.App. at 417 (citing *Scates v. Gober*, 14 Vet.App. 62 (2000) (en banc), for the rule that the RO had to determine such eligibility in the first instance). Given this disposition, we concluded that we had

7

no authority to consider an EAJA award. "During the entire pendency of this appeal," we reasoned, "the Court has not had jurisdiction over the underlying claim on the merits, i.e., whether the appellant was entitled to attorney fees under a direct-payment contingency-fee agreement." *Id.* at 417–18. "Once this Court determined that the Board lacked jurisdiction," we continued, "that determination deprived this Court of jurisdiction over the merits of the underlying claim." *Id.* at 418. We acknowledged that we had jurisdiction to determine whether the Board acted within its own jurisdiction. *Id.* at 418. But citing *Heath* and the Federal Circuit's *Burkhardt* decision, the Court concluded that "the exercise of jurisdiction to decide its own jurisdiction is not 'jurisdiction of' a civil action for purposes of determining an EAJA award under section 2412(d)(1)(A)." *Id.* at 419; *see also id.* at 418–19 ("The Court's exercise of jurisdiction to determine whether it has jurisdiction in no way implies that the Court would have jurisdiction over the merits of a claim."). In other words, we treated our EAJA jurisdiction as conditioned on the Board's jurisdiction over the merits of what it was adjudicating. Accordingly, we dismissed the EAJA application.

On appeal, the Federal Circuit repudiated this theory of conditional jurisdiction and reversed our dismissal. This "Court erred in focusing its EAJA jurisdictional analysis on the Board's lack of jurisdiction over the claim for direct fee payment, rather than on the . . . Court's proper exercise of its appellate jurisdiction pursuant to 38 U.S.C. § 7252," the Federal Circuit explained. *Halpern II,* 313 F.3d at 1368. The only issue before this Court was "whether the Board had original jurisdiction over the claim for direct fee payment." *Id.* It was well within our "appellate jurisdiction to decide this question," *id.*, given our authority under section 7261(a)(3) to "hold unlawful or set aside decisions … found to be . . . in excess of statutory jurisdiction, authority, or limitations." This Court therefore "had 'jurisdiction of' a 'civil action' within the meaning of the EAJA." *Id.*

Put differently, the Federal Circuit reasoned that, if this Court's jurisdiction were actually contingent upon whether the Board possessed jurisdiction, there would be no basis on which this Court could even *review*, still less set aside, a decision in which the Board ruled in excess of its jurisdiction, thus rendering section 7262(a)(3) ineffectual. Instead, by directing this Court to review whether the Board's exercise of jurisdiction was proper, Congress did not make the Court's exercise of jurisdiction under section 7262(a) contingent on the answer to the question of whether the Board strayed beyond its jurisdictional limitations. For that reason, the Federal Circuit observed that the sole issue in Mr. Halpern's appeal to this Court was "whether the Board had

8

original jurisdiction over the claim for direct fee payment." *Id.* We had jurisdiction to consider that question. The fact that we did "not [have] jurisdiction over the underlying claim *on the merits*," *Halpern I*, 15 Vet.App. at 417 (emphasis added), was irrelevant for EAJA purposes, *see Halpern II*, 313 F.3d at 1369.

Taken together, the Federal Circuit's decisions in *Hudson* and *Halpern II* make clear that the "jurisdiction" required by section 2412(d)(1)(A) before an EAJA application can be considered is not confined to the Court's jurisdiction over the *merits* of a Board decision but encompasses the Court's jurisdiction to assess the propriety of the Board's exercise of jurisdiction. It is a venerable maxim that a Federal court is authorized and "obligated to consider not only its own jurisdiction but that of the tribunal from which an appeal is taken." *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983) (citing *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 382 (1884)). To the extent that our caselaw suggests that this Court's jurisdiction to review the Board's exercise of jurisdiction does not satisfy the jurisdictional predicate for EAJA award eligibility under section 2412(d)(1)(A), our cases are incompatible with *Hudson* and *Halpern II*.[2]

Accordingly, because the Court possessed jurisdiction to review and set aside the underlying decision in Mr. Greenidge's case as in excess of the Board's jurisdiction, we have "jurisdiction of that" "civil action" as required by EAJA. 28 U.S.C. § 2412(d)(1)(A). For this reason, the Court also has authority to consider the EAJA application in his case.

## B. *Prevailing Party*

But to succeed on this EAJA application, Mr. Greenidge must also show that he is a "prevailing party." 28 U.S.C. § 2412(d)(1)(A); *see Blue v. Wilkie*, 30 Vet.App. 61, 65 (2018). In *Blue*, we set forth what we understood to be the "definitive" test for "determining prevailing party status under . . . EAJA in the context of remands to administrative agencies." *Id.* at 67 n.3. An appellant who secures a remand from this Court to VA is a prevailing party when (1) "the remand was necessitated by or predicated upon administrative error," (2) the Court "did not retain jurisdiction," and (3) "the language in the remand order clearly called for further agency

---

[2] To be clear, the caselaw we have been discussing concerns the Court's jurisdiction to assess the Board's exercise of its jurisdiction and to consider an EAJA application. This opinion does not alter the rule that, when it comes to the *merits* of a particular issue adjudicated in a Board decision, this "Court's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed." *Skaar v. McDonough*, 48 F.4th 1323, 1333 (Fed. Cir. 2022) (quotation marks omitted). Determining whether the Board should or should not have addressed the merits of an issue is within this Court's jurisdiction, *Bean v. McDonough*, 66 F.4th 979, 990 (Fed. Cir. 2023), and our jurisdiction doesn't disappear if we determine the answer is no. But when we conclude that the Board shouldn't have addressed the merits, that conclusion means that we cannot review the merits of what the Board decided either.

9

proceedings, which leaves the possibility of attaining a favorable merits determination." *Id.* at 67 (citing *Dover v. McDonald*, 818 F.3d 1316 (Fed. Cir. 2016)).

Under *Blue*'s framework, the most immediate obstacle for the veteran is that there was no remand to the Board in this case; instead, the Court simply vacated the Board decision and dismissed the appeal. Indeed, the whole basis of the veteran's appeal was that the Board reached out and prematurely adjudicated the CUE motion before he had decided to file an NOD and invoke the Board's jurisdiction. Since there was no matter properly before the Board at the time it rendered its decision, there was nothing for the Court to remand. *See* Reply Br. at 1–2 (agreeing that vacatur without remand was appropriate).

More importantly, the absence of a remand order here means perforce that there was "no remand order clearly call[ing] for further agency proceedings." *Blue*, 30 Vet.App. at 67. That is a critical consideration in this case. In the *Halpern* litigation, the Federal Circuit ultimately concluded that this Court's disposition of the appeal—vacating the Board decision (for lack of original jurisdiction to determine an attorney's eligibility for a contingent fee award) and remanding the case to the Board with instructions to dismiss—did not confer prevailing party status. *Halpern v. Principi*, 384 F.3d 1297, 1300, 1306 (Fed. Cir. 2004) (*Halpern III*).[3] The Federal Circuit later distinguished *Halpern III* on the basis that "nothing in [this Court's] disposition . . . require[d] further agency proceedings." *Dover*, 818 F.3d at 1319. By contrast, in the *Dover* case, this Court—despite concluding that the Board should have declined to consider a vague CUE motion and dismissed it without prejudice—set aside the Board decision and remanded the matter "for further proceedings consistent with" the Court's decision. *Id.* at 1317. What is more, this Court directed that Mrs. Dover could submit additional evidence and argument and that the Board was "required to consider" it, directions with which the Board complied. *Id.* "Because the remand order both contemplated and precipitated further agency proceedings on the merits," the Federal Circuit reasoned, "Mrs. Dover was the prevailing party." *Id.* at 1319. In Mr. Greenidge's case, however, the Court did not mandate additional Board or VA proceedings.

Although there is much to commend in Judge Jaquith's interpretation of who constitutes a prevailing party, governing caselaw is clear about the various requirements a party must satisfy to

---

[3] For simplicity, we refer to this decision as *Halpern III* because it is the third among the line of decisions that we discuss here. In actual fact, there were more than three published decisions throughout the lifecycle of the litigation; we thus offer a note of caution that other published opinions may provide a different numbering set for identifying the various *Halpern* decisions.

qualify as a prevailing party. Nor can we find support for Mr. Greenidge's contention "that the absence of a remand is immaterial because of the undebatable error of law made by the Board in taking jurisdiction in a matter where there was no jurisdiction-conferring NOD." EAJA Reply at 7. *Blue* was clear that the presence of Board error is only one element in the prevailing party analysis; there must also be a clear call by this Court "for further agency proceedings." 30 Vet.App. at 67. Decisions since *Blue* have made clear that the presence of Board error and the presence of a remand ordering additional Board proceedings are separate and individually necessary considerations in a prevailing party inquiry. *See, e.g.*, *Winters v. Wilkie*, 898 F.3d 1377, 1382 (Fed. Cir. 2018); *Robinson v. O'Rourke*, 891 F.3d 976, 980–81 (Fed. Cir. 2018). Moreover, Mr. Greenidge's position would be impossible to square with *Halpern III*. There, the Board had also erred by improperly assuming control over a matter that it did not have authority to adjudicate. Yet despite that error, a remand to the Board with instructions to dismiss did not qualify Mr. Halpern as a prevailing party because no further Board proceedings were required by the Court. *See Dover*, 818 F.3d at 1319. It would be incongruous to conclude that Mr. Greenidge is a prevailing party when there was not even a basis for the Court to issue a remand order.

Mr. Greenidge also argues that he is a prevailing party because the Court's vacatur of the Board decision removed it as an obstacle to his litigating his CUE motion before the Board—now that he has filed an NOD and invoked the Board jurisdiction—thereby materially altering his legal relationship vis-à-vis the Secretary. Again, we are unpersuaded. True, the Court observed that vacatur of the Board decision adjudicating CUE in this case would "let the pending appeal move forward." *Greenidge*, 2022 WL 575165, at *1. But this disposition "merely afforded [Mr. Greenidge] an opportunity to have [his] otherwise finally denied [motion] reconsidered by the Board" and was accompanied by "no discussion directed to the merits of the [motion]." *Winters*, 898 F.3d at 1384 (citing *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016)). Such an opportunity, although it permits Mr. Greenidge to continue his fight for vindication on his CUE motion, does not constitute a material alteration in the legal relationship between him and the Secretary. *See id.*; *see also Robinson*, 891 F.3d at 985 (concluding that a remand for the Board to consider a matter "did not materially alter the relationship between the parties," even if the remand "compelled the Board to consider new evidence and argument").

Accordingly, we conclude that Mr. Greenidge is not a prevailing party.

11

### III. CONCLUSION

On remand from the Federal Circuit, the Court WITHDRAWS its October 19, 2022, EAJA memorandum decision and issues this decision in its place. For the reasons discussed above, the May 24, 2022, EAJA application is DENIED.

JAQUITH, *Judge*, dissenting: I completely agree that the Court has jurisdiction to consider Mr. Greenidge's application for attorney fees under the Equal Access to Justice Act, as eloquently explained in part II.A. of the Court's opinion. But I disagree with the majority's conclusion that Mr. Greenidge is not a prevailing party, so I must respectfully dissent. Now that we know that the Court has the authority to address the veteran's EAJA application, there is no persuasive reason for another fee denial that "does not sit well with the undeniably favorable result counsel achieved for his client on appeal (and for which he should be commended)." *Greenidge v. McDonough*, No. 20-7820(E), 2022 WL 11163723, at *2 (Vet. App. Oct. 19, 2022).

"*Prevail* means to successfully persuade someone of something." *Prevail*, Vocabulary.com Dictionary, https://www.vocabulary.com/dictionary/prevail (last accessed May 15, 2024); *see Prevail*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/prevail (last accessed May 15, 2024) (defining "prevail" as "to use persuasion successfully"). Prevail is precisely what the veteran did in his underlying case, in which he appealed the Board's October 2022 decision prematurely denying his CUE motion—which was not yet before the Board—the Secretary agreed that the Board had erred, and the Court vacated the Board's decision and dismissed the appeal so the veteran's later appeal of the regional office's denial of his CUE motion could move forward.

Recall that the veteran appealed the Board's violation of law in its October 2022 decision by denying "revision of the February 1993 rating decision on the basis of [CUE] to reflect an initial rating in excess of 10 percent beginning on May 9, 1983, for [PTSD]." R. at 5. The veteran highlighted that the Board had no jurisdiction to act because the February 1993 regional office (RO) decision had awarded a May 10, 1991, effective date, the Board itself had granted the May 9, 1983 effective date in its September 2019 decision, the RO had just, in May 2020, "effectuated the earlier effective date," assigned a 10 percent disability rating, and found no CUE in the February 1993 decision, R. at 6, see R. at 84, and the veteran had not yet submitted his Notice of Disagreement with the RO's May 2020 decision. The Board noted that the veteran had contended

12

that "he should have been initially rated 100 percent disabled from the time of his informal 1983 claim." R. at 6-7; see R. at 784. But the veteran's April 2009 CUE motion and May 2009 NOD alleged CUE in the effective date assigned to his PTSD rating, not the disability percentage. R. at 1217, 1115. And the RO's May 2009 rating decision, issued in response to the veteran's CUE motion (and provoking his May 2009 NOD), did not even mention the February 1993 10% rating—only a May 2008 100%  rating with an April 2007 effective date—and decided only that there was no CUE in the assigned effective date. R. at 1208.

In January 2021, the veteran submitted his NOD appealing to the Board the May 2020 RO decision awarding a 10% PTSD rating, effective in May 1983, and denying his CUE motion. It was that January 2021 appeal that the Court's February 2022 decision rescued. *Greenidge v. McDonough*, No. 20-7820, 2022 WL 575165, at *1 (Vet. App. Feb. 25, 2022) ("[L]et the pending appeal move forward."). The veteran chose the evidence submission option and provided a detailed statement in support of his contention that a higher rating was warranted. Thanks to the Court's February 2022 decision, VA will consider the veteran's favorable evidence in properly adjudicating his CUE motion.

The majority's reliance on *Winters*, *Robinson*, *Blue*, and *Halpern III* to declare that, to prevail, it is necessary for a party to secure a remand ordering additional Board proceedings, *ante* at 10-11, converts a means of fulfilling the prevailing party test into a requirement, and thus is misplaced. The Supreme Court has made clear that "a 'prevailing party' is one who has been awarded some relief by the court," meaning a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001); *see CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) ("[T]he 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties,'" with the change "marked by 'judicial imprimatur.'") (first quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989), and then quoting *Buckhannon*, 532 U.S. at 605). The Federal Circuit has followed suit, citing *Buckhannon* in concluding that "a judicially sanctioned change in the legal relationship of the parties" is required for a veteran to be a prevailing party entitled to attorney fees and expenses under EAJA. *Cavaciuti v. McDonough*, 75 F.4th 1363, 1367 (Fed. Cir. 2023).

*Winters* applied the Supreme Court test, quoting *CRST*, and denied fees because it found no agency error—only a remand based on judicial economy. *Winters v. Wilkie*, 898 F.3d 1377,

13

1381-84 (Fed. Cir. 2018). *Robinson* relied on *Buckhannon* and also denied fees because there was no agency error, just a remand for the Board to consider a belated "argument that it could not have considered previously, through no fault of its own." *Robinson v. O'Rourke*, 891 F.3d 976, 980 (2018). *Halpern III* concerned "jurisdiction to decide eligibility for direct payment of a withheld contingency fee," which the RO had referred to the Board and our Court had directed the Board to send back to the RO. *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004) (*Halpern III*); *see Halpern v. Principi*, 15 Vet.App. 416, 417 (2002) (*Halpern I*), *rev'd*, 313 F.3d 1364 (Fed. Cir. 2002) (*Halpern II*). The Federal Circuit affirmed denial of fees because there was nothing in this Court's disposition that required further agency proceedings—the Court "simply direct[ed] the Board to dismiss the action for lack of original jurisdiction." *Halpern III*, 384 F.3d at 1306.

There are several reasons that *Halpern III* should not govern in this case. First, the result in the underlying case in *Halpern* was believed to have been compelled by a change in the law wrought by this Court's decision in *Scates v. Gober*, 14 Vet.App. 62 (2000) (en banc) (per curiam). *See Halpern Iv*, 15 Vet.App. at 417. In contrast, the problem here was clear Board error and overreach, as conceded by the Secretary but not corrected by VA.

Second, *Halpern III* rejected this Court's reasoning, holding that "*Scates* simply was not a change in case law." *Halpern III*, 384 F.3d at 1303. The Federal Circuit nonetheless affirmed the denial of fees upon its own finding that the attorney was not a prevailing party because our Court had not required further proceedings or addressed the merits of the attorney's entitlement to fees. *Id.* at 1306. Here, the Federal Circuit granted the Secretary's motion for remand to allow our Court "the opportunity to 'address the effects, if any, of *Halpern[ v. Principi*, 313 F.3d 1364 (Fed. Cir. 2002),] and other relevant binding precedent on [the] decision, and, if appropriate, to address in the first instance whether [Marcos] Greenidge qualifies as a prevailing party for the purposes of EAJA.'" *Greenidge v. McDonough*, No. 2023-1445, 2023 WL 5286566, at *1 (Fed. Cir. Aug. 17, 2023) (quoting Secretary's motion for remand at 1) (alterations in original). The Federal Circuit did not express its view of the case, merely remanding for our Court "to reconsider its decision in light of the arguments and precedent raised in the motion and this order." *Id.* And the *Halpern* decision cited by the Federal Circuit held only that our Court had jurisdiction to entertain an application for attorney fees under EAJA; that *Halpern* decision declined to address whether the attorney was a prevailing party, instead remanding that question to our Court. *Halpern II*, 313 F.3d at 1369.

14

Third, the underlying case in *Halpern* concerned only attorney fees and whether direct-payment fee eligibility could be determined by the Board, on referral from the RO, or was required to be determined by the RO in the first instance. In remanding the case to our Court, the Federal Circuit noted that the Board had held that the attorney's "fee agreement specified a fee in excess of 20 percent of the benefit award," so he "was not eligible for payment of his fees out of past-due benefits," and the Federal Circuit highlighted the statutory provision that requires that, "for a fee to be paid directly by [VA] to the attorney, the total fee provided for in the agreement 'may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.'" *Halpern II*, 313 F.3d at 1366 (quoting 38 U.S.C. § 5904(d)(1)).

Twelve years after *Halpern III*, the Federal Circuit declared that a remand for the Board to dismiss a case without prejudice would not foreclose prevailing party status. *Dover v. McDonald*, 818 F.3d 1316, 1319 (Fed. Cir. 2016). And *Dover* clarified that, when there is a remand, "[b]ecause the ultimate merits determination is irrelevant, *Halpern* requires only that the remand leave the *possibility* of attaining a favorable merits determination through further agency proceedings." *Dover*, 818 F.3d at 1319. The remand order in *Dover* "contemplated and precipitated further agency proceedings on the merits," so the appellant was the prevailing party. *Id.* In this case, there was no remand, but the Court's order—vacating the Board decision to "let the pending appeal move forward," *Greenidge*, 2022 WL 575165, at *1—contemplated and enabled further agency proceedings on the merits, and thus precipitated "the *possibility* of attaining a favorable merits determination through further agency proceedings." *Dover*, 818 F.3d at 1319.

In the context of a CUE motion, vacating an improper decision is a pivotal prevailment "because denial of a CUE motion may foreclose any further attempt at revision." *Perciavalle v. McDonough*, 35 Vet.App. 11, 30-31 (2021) (en banc), *aff'd in part, vacated in part on other grounds*, 74 F.4th 1374 (Fed. Cir. 2023); *see Acciola v. Peake*, 22 Vet.App. 320, 326 (2008). Left in place, the October 2020 Board decision would have extinguished the veteran's 40-year fight for benefits for "[PTSD] which manifested on active duty during Vietnam in 1970 and 1971," when he "had extensive combat and combat jumps with the 101st Airborne Division,"  R. at 2867, see R. at 2355, and earned a Bronze Star, R. at 745-47. Decisions of an RO "on issues that have been decided on appeal by the Board" are not subject to revision for CUE. 38 C.F.R. § 3.105(a)(1)(v) (2023); *see Manning v. Principi*, 16 Vet.App. 534, 541-42 (2002), *aff'd*, 85 Fed. App'x 216 (Fed. Cir. 2004). A final decision on a CUE motion relating to a prior Board decision likewise renders

15

that decision no longer subject to revision for CUE. *See Hillyard v. Shinseki*, 24 Vet.App. 343, 354 (2011); 38 C.F.R. § 20.1409(c) (2023).

Denying fees because the Court failed to use the word "remand" ignores the obligation of the EAJA decision-maker to consider what the merits decision-maker actually did and not just what the merits decision-maker said. *See Blue v. Wilkie*, 30 Vet.App. 61, 68-69 (2018). The Court considering EAJA fees starts with the words of the Court's decision of the underlying dispute but also must look beyond those words to their context, the nature and effect of the decision, the record, and the actions of the parties. *Id.* In *Blue*, the Court found that the veteran was "a prevailing party for EAJA purposes based on a contextual assessment of the underlying merits decision," which was "implicitly predicated on an . . . agency error" even though the decision-maker "explicitly found no error." *Id.* at 70-72. Considering context, the nature and effect of the decision, the record, and the actions of the parties is just as important for discerning whether further proceedings are contemplated as it is for ascertaining whether there was agency error. *See generally, Lawson v. McDonough*, No. 15-4598(E), 2021 WL 1912385, at *4–5 (Vet. App. May 13, 2021) (mem. dec.) (persuasively considering a Court stay pending Board review the functional equivalent of a remand).

Moreover, if we turn to the actual test for prevailing, we should find that Mr. Greenidge did indeed secure a judicially sanctioned material alteration in the legal relationship of the parties. As our Court recognized in *Conley*, success is measured against what was sought, which may include a procedural win that materially alters the parties' relationship and affords a path to ultimate victory on the merits. *Conley v. Wilkie*, 30 Vet.App. 224, 228 (2018) ("Though additional litigation may ensue postremand on the merits of Mr. Conley's case, that litigation will be enhanced by additional testimonial evidence submitted during that new Board hearing."). In *Conley*, it was affording the veteran a second board hearing. *Id.* at 229 ("Here, . . . the Court considered the merits of Mr. Conley's case and, based on his argument, granted a portion of the relief sought on appeal— a remand for a second Board hearing. . . . In doing so, the Court implicitly found that the Board erred in not affording Mr. Conley a second hearing."). In this case, it is affording the veteran his right to be heard before adjudicating his case. Prevailing party status is obtained "'[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing suit.'" *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993) (quoting *Texas State Teachers Assn.*, 489 U.S. at 791–792); *see Cavaciuti*, 75 F.4th at 1367; *Sai v. Dept. of Homeland Sec.*, 179

16

F. Supp. 3d 128, 132–33 (D.D.C. 2016) (holding that a plaintiff who secured a court order compelling a timely response to his administrative complaint was a prevailing party although the plaintiff had not yet challenged the defendant's underlying conduct). Mr. Greenidge succeeded on the single issue he appealed to the Court and achieved the principal benefit he sought. "A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" *Fox v. Vice*, 563 U.S. 826, 834 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1989)).

Mr. Greenidge was the prevailing party in this case because the vacatur he won was necessitated by agency error, the decision "expressly contemplated . . . further agency proceedings," and the Court did not retain jurisdiction. *See Dover*, 818 F.3d at 1317, 1320. The Court's February 2022 decision materially altered the legal relationship of the parties by restoring the veteran's right to be heard on his Board appeal of the RO's denial of his CUE motion, including to submit evidence—rights otherwise forever lost by the Board's extrajurisdictional action. EAJA is especially significant to keeping the system for adjudicating veterans' claims for benefits uniquely pro-claimant by enabling veterans to have the advice, assistance, and advocacy of an attorney to sharpen the identification and presentation of the relevant facts and applicable law and increase the likelihood of an appropriate outcome. *See, e.g., Froio v. McDonald*, 27 Vet.App. 352, 355–56 (2015). It is incongruous with the principle of equal access to justice to deny the veteran's application for attorney fees and expenses incurred to undo a Board error so egregious that vacatur and dismissal were warranted to empower and induce the Board to afford the veteran his right to be heard on his CUE motion before the Board adjudicates it. *See Kelly v. Nicholson*, 463 F.3d 1349, 1353, 1355 (Fed. Cir. 2006) (explaining that removing financial deterrents to claimants vindicating their rights "is imperative in the veterans benefits context, which is intended to be uniquely pro-claimant," and that "[i]t would be incongruous to allow courts to make an end run around the purposes underlying EAJA by making . . . trivial distinctions and masking [their] actions in artfully worded orders."). I respectfully dissent.

17